DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. The jury found Ronald Wright, Jr., defendant below and appellant herein, guilty of four counts of rape, in violation of R.C. 2907.02(A)(1)(b), with a specification that appellant purposely compelled the victim to submit by force or threat of force. See R.C.2907.02(B).[2]
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT'S SUBSTANTIAL RIGHTS BY ADMITTING UNDULY PREJUDICIAL TESTIMONY ABOUT OTHER ACTS AND UNCHARGED MISCONDUCT BY THE DEFENDANT, THE ONLY PROBATIVE VALUE OF WHICH WAS TO ESTABLISH THE DEFENDANT'S BAD CHARACTER AND CONDUCT IN CONFORMITY THEREWITH. THE ADMISSION OF THIS TESTIMONY VIOLATED THE APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FAILING TO COMPLY WITH CRIM.R. 24(F) BY FAILING TO GRANT THE DEFENSE AN OPPORTUNITY TO EXERCISE A PEREMPTORY CHALLENGE TO THE ALTERNATE JURORS."
THIRD ASSIGNMENT OF ERROR:
 "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION."
On December 17, 1999, the Washington County Grand Jury returned an indictment that charged appellant with four counts of rape, in violation of R.C. 2907.02(A)(1)(b) and (B), which involved his girlfriend's eleven-year-old daughter, Samantha.
On July 10, 2000 and continuing on July 11, 2000, the trial court held a jury trial. At trial, the following evidence was adduced.
Samantha testified that appellant, with whom her mother lived, typically was the disciplinarian. She explained that her punishments ranged from performing exercises, to grounding or spankings. Samantha stated the appellant administered the spankings in the bathroom.
Samantha explained that beginning in May of 1999, appellant instituted a new type of punishment that she called "the option." Samantha stated that for her punishment appellant offered her the option of either receiving a spanking or performing oral sex upon appellant. Samantha testified that the first time appellant "offered" her this alternative discipline, she refused and received a spanking instead. To avoid the pain of the spankings, however, Samantha, on four or five occasions, chose "the option" instead of the spankings. Samantha stated that in mid-to late-December she finally told Melayne Pritchett, a family friend, because she worried that the same thing was happening to her brother or sisters.
Pritchett testified that she sometimes was present when appellant punished Samantha. Like Samantha, Pritchett stated that the spankings occurred in an upstairs bathroom. Pritchett testified that on some occasions, Samantha's punishment lasted approximately ten minutes. On other occasions, however, the punishment lasted up to one-half hour. Pritchett stated that on some occasions after Samantha had received her punishment, Samantha walked downstairs with a dazed look.
Over appellant's objection, the trial court permitted appellant's eighteen-year-old daughter, Briana Nunn, to testify about instances when appellant forced her to perform oral sex upon him. Nunn testified that beginning at the age of five or six, and continuing until the age of fifteen, appellant made her perform oral sex. She stated that he would state different reasons for why she had to do it: "If you do this, then you can go here, you can go there," or "if you do this, I won't cheat on your mother," or "I will tell her that I'm not cheating." Nunn stated that sometimes appellant would not let her go out with her friends unless she performed oral sex.
Nunn stated that the oral sex encounters ended when she was fifteen. Nunn explained that as her father drove her to her boyfriend's house, he stated that if she wanted him to continue driving, she must perform oral sex. Nunn stated that she refused, they argued, and appellant finally took her to her boyfriend's house. Appellant never again made Nunn perform oral sex.
Nunn stated that when she was twelve or thirteen, she told a friend about the sexual abuse and that her friend's mother notified children services. During the investigation, however, Nunn denied that the sexual abuse occurred. Nunn explained that she decided not to tell the children services investigators about the sexual abuse because she did not want to hurt her mother.
Nunn stated that in April of 2000, she finally disclosed the sexual abuse information to law enforcement. She stated that she came forward because of Samantha's allegations against appellant.
On July 11, 2000, the jury found appellant guilty of all counts. On August 29, 2000, the trial court found appellant to be a sexual predator and sentenced appellant to four consecutive life sentences. Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant argues that the trial court erred by permitting Briana to testify about appellant's alleged prior sexual acts. Appellant asserts that the trial court erred by admitting the other acts evidence because: (1) the evidence was offered only to establish his propensity to commit the crime in question; (2) the evidence did not relate to a material issue in the trial; (3) the evidence did not tend to prove one of the elements of the crime; (4) substantial proof that appellant committed the prior acts does not exist because the evidence was unsubstantiated, was uncorroborated, and was too remote in time; and (5) the probative value of the evidence did not outweigh the prejudicial effect.
The state, on the other hand, contends that Nunns's testimony falls within the "scheme, plan, or system" exception and that her testimony helped prove a material issue in the trial, namely whether appellant used force or threat of force. Moreover, the state disagrees with appellant that the prejudicial impact of Nunn's testimony outweighed its probative force.
 A
STANDARD OF REVIEW
Initially, we note that the decision to admit or exclude relevant evidence is within the sound discretion of the trial court. State v. Bey
(1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490. The trial court's decision to admit or exclude relevant evidence cannot be reversed absent an abuse of that discretion. See, e.g., State v. Combs (1991),62 Ohio St.3d 278, 581 N.E.2d 1071; State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343; State v. Rooker (Apr. 15, 1993), Pike App. No. 483, unreported. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., State v. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; Statev. Montgomery (1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In reJane Doe 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 359 N.E.2d 1301).
 B
ADMISSIBILITY OF OTHER ACT EVIDENCE
Generally, all relevant evidence is admissible. See Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio." Evid.R. 402. Additionally, relevant "evidence is not admissible if its probative value * * * substantially outweigh[s] * * * the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
Although evidence of an accused's character, including his prior "bad acts," in a criminal case may be relevant,[3] Evid.R. 404 sets forth a general bar against the use of such character evidence. Of importance to the case sub judice, Evid.R. 404(B) provides as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.
Additionally, in a case involving a rape allegation, R.C. 2907.02(D) generally prohibits evidence of specific instances of the defendant's sexual activity. The statute provides:
 Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59
of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
Thus, in a case involving a violation of R.C. 2907.02, evidence of the defendant's sexual activity may not be admitted unless: (1) the evidence relates to a material issue; (2) the inflammatory or prejudicial nature of the evidence does not outweigh its probative value; and (3) the evidence (a) relates to the origin of semen, pregnancy, or disease, (b) relates to the defendant's past sexual activity with the alleged victim of the crime, or (c) is admissible pursuant to R.C. 2945.59. See R.C.2907.01(D).
In the instant case, the other acts evidence concerns appellant's sexual activity. The other acts evidence does not, however, relate to the origin of semen, pregnancy, disease nor to appellant's past sexual activity with the alleged victim of the crime. We therefore must determine whether the evidence is admissible pursuant to R.C. 2945.59.
R.C. 2945.59 provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
R.C. 2945.59 should be construed in conformity with Evid.R. 404(B). SeeState v. Broom (1988), 40 Ohio St.3d 277, 281-282, 533 N.E.2d 682,689-690; State v. Clemons (1994), 94 Ohio App.3d 701, 707, 641 N.E.2d 778,782. Moreover, because both the statute and the rule constitute exceptions to the common law prohibition against admitting a defendant's other acts to prove conforming conduct, the rule and the statute "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." Broom,40 Ohio St.3d at 281-282, 533 N.E.2d at 689-690.
In State v. Schaim (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, the court discussed the underlying rationale for the limited admissibility of other acts evidence as follows:
 "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See State v. Curry (1975), 43 Ohio St.2d 66, 68, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, * * *. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible."
Schaim, 65 Ohio St.3d at 59, 600 N.E.2d at 668.
Although both R.C. 2945.59 and Evid.R. 404(B) carefully limit the admissibility of other acts evidence, neither the statute nor the rule contains an exhaustive list of permissible purposes for which other acts evidence may be offered. See State v. Smith (1990), 49 Ohio St.3d 137,140, 551 N.E.2d 190, 193 (noting that "Evid.R. 404(B) permits `other acts' evidence for `other purposes' including, but not limited to, certain enumerated issues"); State v. Watson (1971), 28 Ohio St.2d 15,20-21, 275 N.E.2d 153, 157 (stating that other acts evidence "was not inadmissible simply because it did not fall within the exceptions permitting introduction of prior acts specified in R.C. 2945.59")); see, also, State v. Miller (Oct. 14, 1993), Meigs App. No. 92CA496, unreported. Rather, other acts evidence generally is admissible if the evidence does not otherwise violate the general rule against propensity evidence. State v. Roe (1989), 41 Ohio St.3d 18, 23, 535 N.E.2d 1351,1359 (noting that the other acts evidence "w[as] admitted for purposes `"other than to show mere propensity or disposition on the accused's part to commit the crime"'") (quoting State v. Watson (1971), 28 Ohio St.2d 15,21, 275 N.E.2d 153, 156 and Evid.R. 404(B)); see, also, State v. Aliff
(Apr. 12, 2000), Lawrence App. No. 99 CA 8, unreported; Bryden and Park, Other Crimes Evidence in Sex Offense Cases (1994), 78 Minn.L.Rev. 529, 540 ("Uncharged misconduct is admissible, subject to balancing for prejudice, when it is offered for a purpose that does not require" "an inference of bad character from bad acts, and then an inference of guilt to the crime charged from the bad character.").
As the court explained in Watson, 28 Ohio St.2d at 21,275 N.E.2d at 157:
 "* * * It is an established principle of law that, notwithstanding the general rule that evidence of other criminal acts is not admissible, such `general rule of exclusion does not apply where the evidence of another crime is relevant and tends directly * * * to prove * * * [the] accused's guilt of the crime charged, or to connect him with it, or to prove some particular element or material fact in such crime; and evidence of other offenses may be received if relevant for any purpose other than to show mere propensity or disposition on [the] accused's part to commit the crime.' 22A Corpus Juris Secundum 744, Section 683.
 Stated another way, the rule is that `except when it shows merely criminal disposition * * * evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. "The general tests of the admissibility of evidence in a criminal case are: * * * does it tend logically, naturally, and by reasonable inference to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime, or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not."' People v. Peete
(1946), 28 Cal.2d 306, 314, 169 P.2d 924."
The Watson court therefore "repudiate[d] the notion that criminality of conduct offered for some relevant purpose is an obstacle to its reception." Watson, 28 Ohio St.2d at 21, 275 N.E.2d at 157.
Thus, both the statute and the rule permit other acts evidence: (1) if the evidence is offered to show one of the matters enumerated in the statute or the rule; or (2) if the evidence tends to show any other matter at issue, as long as the evidence does not tend only to show the accused's propensity to commit the crime in question. See State v. Smith
(1992), 84 Ohio App.3d 647, 664, 617 N.E.2d 1160, 1172 (stating that other acts "evidence is never admissible when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment"); see, also, State v. Bey (1999), 85 Ohio St.3d 487, 490,709 N.E.2d 484, 490-91; see, e.g., State v. Tibbetts (2001),92 Ohio St.3d 146, 161, 749 N.E.2d 226, 249; State v. Williams (1997),79 Ohio St.3d 1, 11, 679 N.E.2d 646, 657. Thus, to determine whether to admit other acts into evidence, a court must evaluate whether the evidence relates to one of the matters set forth in R.C. 2945.59 or Evid.R. 404(B), or whether it relates to a matter other than the defendant's propensity to commit the crime in question. See, generally,State v. Slagle (1992), 65 Ohio St.3d 597, 606, 605 N.E.2d 916, 926;State v. Gardner (1979), 59 Ohio St.2d 14, 20, 391 N.E.2d 337, 342;Watson, supra.
After a court determines that certain evidence is not inadmissible character or propensity evidence, the court next must decide whether the evidence is relevant; that is, whether the evidence relates to a material issue at trial, whether the evidence tends to prove that material issue, and whether substantial proof exists that the defendant committed the alleged other acts. See, generally, State v. Lowe (1994),69 Ohio St.3d 527, 530, 634 N.E.2d 616, 619; Slagle; Gardner. Relevant evidence tends to establish a fact that is material to the action. To assess whether certain evidence is material, a trial court must evaluate:
 "the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is `in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleadings and controlled by the substantive law."
McCormick, Evidence (4 Ed.Strong Ed. 1992) 338, Section 185.
Once a court determines that evidence is material, the court then must consider the probative value of the evidence; that is, "the tendency of evidence to establish the proposition that it is offered to prove." Id. at 339. For evidence to have probative force, "the evidence must be more (or less) probable when the disputed fact is true rather than false."Id.
For other acts evidence to have probative value, substantial proof must exist that the defendant committed the act. See, e.g., Bey,85 Ohio St.3d at 490, 709 N.E.2d at 490. Moreover, the other acts must not lack a temporal, modal, or situational relationship to the crime charged. SeeSchaim, 65 Ohio St.3d at 60, 600 N.E.2d at 669; State v. Snowden (1976),49 Ohio App.2d 7, 10, 359 N.E.2d 87, 91. Other acts evidence is permissible if "such other acts `tend to show' certain things, e.g., motive and intent, as identified in the statute." State v. Gumm (1995),73 Ohio St.3d 413, 426, 653 N.E.2d 253, 266. "`If such other acts do in fact "tend to show" any of those things they are admissible notwithstanding they may not be "like" or "similar" to the crime charged.'" Id. (quoting State v. Flonnory (1972), 31 Ohio St.2d 124,126, 285 N.E.2d 726, 729).
Once a court decides that the evidence relates to a matter other than the defendant's character or propensity to commit the crime and that the evidence is relevant, the court next must determine whether the prejudicial impact of the evidence outweighs the probative value of the evidence. R.C. 2907.02(D); see, also, Evid.R. 403.
With the foregoing principles in mind, we now consider appellant's contention that Nunn's testimony concerning appellant's alleged prior sexual acts constituted inadmissible propensity evidence.
 C
EXCEPTIONS TO THE GENERAL RULE PROHIBITING OTHER ACTS EVIDENCE
We first consider whether Nunn's testimony fell within any recognized exception to the general rule against admissibility of other acts evidence. Other acts evidence may be admissible as an exception to the general rule if the other acts evidence concerns a matter other than propensity evidence and if the other acts evidence relates to a material issue in the trial. See, e.g., R.C. 2907.02(D); Evid.R. 404(B); Watson,28 Ohio St.2d at 21, 275 N.E.2d at 147.
1. SCHEME, PLAN, OR SYSTEM
In State v. Curry (1975), 43 Ohio St.2d 66, 330 N.E.2d 720, the court explained when other acts evidence is admissible pursuant to the scheme, plan, or system exception:
 "* * *`Scheme, plan, or system' evidence is relevant in two general factual situations. First, those situations in which the `other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. * * * To be admissible pursuant to this sub-category of `scheme, plan or system' evidence, the `other acts' testimony must concern events which are inextricably related to the alleged criminal act. * * *
 Identity of the perpetrator of a crime is the second factual situation in which `scheme, plan or system' evidence is admissible. One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes."
Id., 43 Ohio St.2d at 73, 330 N.E.2d at 725-26.
For "scheme, plan, or system" evidence to be admissible as tending to prove identity, identity must be a material issue in the trial. Id.,43 Ohio St.2d at 72, 330 N.E.2d at 726. Identity is not a material issue when the defendant admits to having been with the victim, but denied engaging in sexual conduct with the victim. Rather, "[i]dentity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime." Smith,84 Ohio App.3d at 666, 617 N.E.2d at 1173; see, also, State v. Hawn (2000),138 Ohio App.3d 449, 462-63, 741 N.E.2d 594, 603; Bryden and Park, supra at 545 ("[I]dentity is in dispute in stranger rape cases, but not in acquaintance rape cases, leading some courts to hold that modus evidence is not admissible in acquaintance rape (consent defense) cases.") (footnote omitted).
In Curry, the defendant was charged with statutory rape. The trial court allowed evidence that the defendant previously had molested an eleven-year-old girl. On appeal to the supreme court, the defendant argued that the trial court improperly allowed the introduction of the other acts testimony. The supreme court agreed, noting that the evidence was not admissible under the "scheme, plan, or system" exception. The court first concluded that the alleged other act did not form part of the immediate background of the crime charged. Id., 43 Ohio St.2d at 73,330 N.E.2d at 725. The court stated that the crime at issue, statutory rape, and the alleged molestation were not "inextricably related," but were "chronologically and factually separate occurrences." Id.
The court next determined that the alleged other act was inadmissible to prove the defendant's identity because "identity was not a material issue." Id., 43 Ohio St.2d at 72, 330 N.E.2d at 726. The court noted that the defendant had not denied being present with the alleged victim, but instead denied sexual contact with her. Id. The court stated: "This denial did not raise an identity question; it created, instead a factual dispute revolving around appellee's conduct with [the victim]." Id.
In State v. Eubank (1979), 60 Ohio St.2d 183, 398 N.E.2d 567, the court similarly concluded that other acts evidence was inadmissible under the "scheme, plan, or system" exception. In Eubank, the defendant was convicted of gross sexual imposition. At trial, the state presented testimony of two young men who testified that the defendant previously had attempted to engage in sexual activities with them.
On appeal, the defendant challenged the introduction of the other acts evidence. The state argued that the other acts were admissible as proving the defendant's scheme, plan, or system in committing the crime. The court rejected the state's argument, noting its previous decision inCurry that scheme, plan, or system evidence is relevant in two situations: one, when the other acts form part of the immediate background of the act and are inextricably related to the crime charged; and two, when the identity of the perpetrator is at issue. Eubank,60 Ohio St.2d at 186, 398 N.E.2d at 569. The court noted that the other acts were not inextricably related to the crime charged but were "chronologically and factually separate occurrences" and that the perpetrator's identity was not at issue. Eubank, 60 Ohio St.2d at 186,398 N.E.2d at 569.
Similarly, in Schaim, the court found evidence of the defendant's past sexual activity inadmissible as tending to establish the defendant's "pattern" in committing like crimes. The defendant in Schaim was accused of: (1) raping his twenty-year-old daughter, Rhonda; (2) gross sexual imposition involving his younger daughter, Leisa; and (3) sexual imposition involving an employee. The state tried all of the counts together.
At trial, Rhonda testified:
 "He didn't force me, but he-it started from such a long time back, that the way he had brought me up and the way he had started with me, I felt like if I didn't do it that I would be punished, `cause every time that he asked me to do something and I wouldn't, it would be held against me. I wouldn't be able to go out. I would be limited. So I felt like if I didn't do it, I would be punished for it."
Rhonda also testified that the defendant often used back rubs as "a prelude to sexual fondling." Id., 65 Ohio St.3d at 51, 600 N.E.2d at 661. Rhonda stated that she saw the defendant rub Leisa's back. Leisa testified that during a back rub, the defendant touched her buttock. The jury subsequently convicted the defendant of raping Rhonda and of gross sexual imposition involving Leisa.
In rejecting the state's argument that the other acts evidence helped establish the defendant's "pattern," the court stated:
 "`Pattern evidence' refers to other acts evidence that is admissible when the defendant's scheme, plan, or system in doing an act is relevant at trial. * * * Evidence of a defendant's scheme, plan, or system in doing an act can be relevant for two reasons: (1) the other acts are part of one criminal transaction such that they are inextricably related to the charged crime, and (2) a common scheme or plan tends to prove the identity of the perpetrator. * * *. Identity was not a material issue in dispute at this trial, and none of these crimes was inextricably linked to the others."
Schaim, 65 Ohio St.3d at 63 n. 11, 600 N.E.2d at 671 (citations omitted).
The supreme court further found that in a separate trial involving the rape of Rhonda,[4] Leisa's testimony that the defendant touched her during a back rub would not have been admissible. The court noted:
 "The material issue regarding the rape charges was whether the defendant had sexual intercourse with Rhonda as described in her testimony and, if so, whether he used physical force or the threat of physical force to accomplish that goal. In short, the main issue was credibility. There was no dispute that if Rhonda was telling the truth, her father was the perpetrator. Under theses circumstances, identity is not a material issue in the case. Intent was also not a material issue in dispute, and even if it had been, testimony regarding touching one daughter's buttock is not relevant to prove the intent required to commit forcible rape."
Schaim, 65 Ohio St.3d at 61, 600 N.E.2d at 669.
Like Curry, Eubank, and Schaim, the other acts evidence in the case at bar does not form part of the immediate background of the crime charged. Thus, like Curry and Eubank, the other acts are not inextricably related to the crime charged, and are chronologically and factually separate occurrences. Whether appellant committed a crime is the crux of the dispute. See Schaim. If a crime did in fact occur, no dispute exists that appellant was the perpetrator. In other words, no dispute exists as to identity.
Thus, under the facts and circumstances present in the case sub judice
(1) the other acts are not inextricably related to the crime charged, and (2) identity is not at issue. Accordingly, we disagree with the state that the other acts evidence was admissible to show appellant's scheme, plan, or system in committing the crime charged. See, generally, State v.Price (1992), 80 Ohio App.3d 35, 41, 608 N.E.2d 818, 822 (holding that in a case involving sexual abuse of the defendant's stepdaughter, testimony of the defendant's stepson that he had seen the defendant having sexual relations with a different stepdaughter inadmissible to prove the defendant's scheme, plan or system). See, also, State v. Lowe (1994),69 Ohio St.3d 527, 634 N.E.2d 616.
We are aware, however, of cases that have reached contrary results under somewhat different factual scenarios.[5] In State v. Cornell
(Nov. 27, 1991), Cuyahoga App. No. 59365, unreported, the defendant was convicted of two counts of rape and eleven counts of gross sexual imposition. At trial, one of the defendant's alleged former victims of sexual abuse testified that the defendant previously had engaged in sexual activities with him.
The court of appeals rejected the defendant's argument that such evidence amounted to improper other acts evidence. Although identity apparently was not at issue and although the other acts were not inextricably related to the crime charged (i.e., they were chronologically and factually separate occurrences), the court nevertheless found the evidence relevant to showing the defendant's "scheme of luring boys under the age of sixteen, with promises of gifts and allowances, with the intent of engaging in sexual activities with them."
Likewise, in State v. McGill (Dec. 8, 2000), Greene App. No. 99 CA 25, unreported, the court upheld the use of other acts evidence under the scheme, plan, or system exception even though the other acts were chronologically and factually separate occurrences from the crime charged and even though identity was not at issue. In McGill, a jury found the defendant guilty of rape and gross sexual imposition against his stepson and stepdaughter. At trial, the court permitted the state to introduce evidence that the defendant previously had been convicted of child endangering. The court of appeals, finding no error with the trial court's decision to admit evidence of the prior conviction, concluded that the evidence of the prior conviction tended to prove the defendant's scheme or plan in committing the rape. The court reasoned:
 "His prior conviction was proof that he had used force against the children before and it was admissible as proof of the scheme or system, i.e., placing fear into the children so that they would cooperate and not report the abuse, which [the defendant] had used to accomplish the alleged crimes against the children."[6]
See, also, State v. Ames (June 11, 2001), Butler App. No. CA2000-024, unreported (permitting evidence of the defendant's prior alleged sexual act with a young girl in a trial involving the defendant's gross sexual imposition upon another young girl under the theory that the evidence tended to show the defendant's modus operandi and to establish the defendant as the perpetrator); State v. Williams (Oct. 7, 1999), Cuyahoga App. No. 74840, unreported ("Courts have held that evidence of physical, emotional, and verbal abuse which transpire in a home between the abuser and the victims may be relevant and probative of a method of control used to force sex upon the victims, and is inextricably related to the charge of rape and gross sexual imposition.").
Thus, in view of the foregoing, we do not believe that the other acts evidence was admissible under the scheme, plan, or system exception.
2. MOTIVE
In Curry, the court stated that motive generally is not a material issue in a case involving sexual crimes. The court stated:
 "`Motive' has been defined by this court as `* * * a mental state which induces an act.' Shelton v. State
(1922), 106 Ohio St. 243, 248, 140 N.E. 153[, 154]. Another court has described it as `* * * the moving power which impels * * * action for a definite result.' People v. Molineux (1901), 168 N.Y. 264, 297, 61 N.E. 286[, 296]. Since it is assumed that human conduct is prompted by a desire to achieve a specific result, the question of motive is generally relevant in all criminal trials, even though the prosecution need not prove motive in order to secure a conviction. * * * However, the motive for the alleged crimes involved in the present case are [sic] apparent. A person commits or attempt to commit statutory rape for the obvious motive of sexual gratification."
Id., 43 Ohio St.2d at 70-71, 330 N.E.2d at 724.
In the case at bar, appellant was charged with rape and, like Curry, the motive for committing rape is readily apparent. Consequently, motive was not a material issue in appellant's trial and the other acts evidence would not have been admissible pursuant to the motive exception.
3. ABSENCE OF MISTAKE OR ACCIDENT
In State v. Burson, the court explained when evidence of other acts is admissible to demonstrate absence of mistake or accident:
 "When the purpose of evidence of other acts is to show the absence of mistake or accident on the part of the defendant in committing the offense charged, it must be shown that a connection, in the mind of the defendant, must have existed between the offense in question and the other acts of a similar nature. * * * The other acts of the defendant must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposefully action in the commission of the offense in question. The evidence is then admissible to the extent it may be relevant in showing the defendant acted in the absence of mistake or accident."
State v. Burson (1974), 38 Ohio St.2d 157, 159, 311 N.E.2d 526, 528-29
(citation omitted).
In the case sub judice, appellant has not claimed that he mistakenly or accidentally had sexual contact with the victim. Instead, appellant has denied any sexual contact with the victim. Thus, the absence of mistake or accident exception is inapplicable to the case at bar.
4. INTENT
Other acts evidence may sometimes be admissible to prove the accused's intent.[7]
 "Evidence of extrinsic acts may be used to prove intent or guilty knowledge when it is a genuine issue in a case. The acts should tend to prove that the accused understood the wrongful nature of his act by virtue of the fact that he committed prior or subsequent acts."
Smith, 49 Ohio St.3d at 140, 551 N.E.2d at 194.
In Smith, the court explained when intent is at issue:
 "It is a fundamental principle of criminal law that when an accused pleads not guilty to a charge which contains `specific intent' as an element of the crime, he places intent squarely at issue and the state is required to prove this element beyond a reasonable doubt. * * * In United States v. Russo
(C.A.11, 1983), 717 F.2d 545, the court held that a defendant's defense of lack of involvement was insufficient to remove the issue of intent from the case, and `* * * the government was not relieved of its burden of proving intent.' Id. at 552."
Smith, 49 Ohio St.3d at 141, 551 N.E.2d at 194 (citation omitted).
In State v. Ditzler (Mar. 28, 2001), Lorain App. No. 00 CA 7604, unreported, the court found that evidence of the defendant's past sexual activity was relevant to prove intent. In Ditzler, the defendant admitted to being present in a tent with the victim, but asserted in his defense that he was merely present while the victim experienced a bad dream or drug-induced hallucination. The Ditzler court concluded that a defense of mere presence at the crime scene places the intent of the defendant at issue. (citing United States v. Hernandez-Guevara (C.A.5, 1998),162 F.3d 863, 870-71; United States v. Moore (C.A.8, 1996), 98 F.3d 347,350). The court noted that "[t]o be convicted of rape or gross sexual imposition by force or threat of force the State must prove that the defendant `purposely compelled the [victim] * * * to submit by force or threat of force.' R.C. 2907.02(A)(2) and 2907.05(A)(1)." The court thus permitted evidence of the defendant's prior conduct discussing sex with boys, providing boys with beer, and watching pornographic movies with boys. The court determined that the other acts testimony was properly admitted to prove the defendant's intent in bringing the victim to the campground and in "plying" him with alcohol and pornography with the purpose of committing forcible rape and gross sexual imposition.
Thus, we do not believe that the intent exception applies to the casesub judice. In this particular case, appellant's "intent" is obvious and does not support the admission of the other acts evidence.
5. OTHER PERMISSIBLE REASONS
Other acts evidence may be admitted for reasons other than those listed in R.C. 2945.59 or Evid.R. 404(B), provided that the evidence is not offered solely to show the accused's propensity to commit the crime in question. For example, "evidence of other acts is admissible if the evidence tends to prove a specific element of the crime charged." Statev. Smith (1990), 49 Ohio St.3d 137, 139-40, 551 N.E.2d 190, 193; see, also, State v. Coleman (1999), 85 Ohio St.3d 129, 140, 707 N.E.2d 476,487 (holding that other acts evidence is admissible to prove an element of a death penalty specification); State v. Wilkinson (1980),64 Ohio St.2d 308, 415 N.E.2d 308 ("`[E]vidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged"'") (quoting United States v. Turner (C.A.7, 1970),423 F.2d 481, 483-84)); State v. Watson (1971), 28 Ohio St.2d 15,275 N.E.2d 153 (holding that other acts evidence may be used to establish possession of a weapon, when possession of a weapon is an element of the crime, even though such other acts evidence also tend to prove that the defendant committed other crimes); State v. Covrett (1993),87 Ohio App.3d 534, 622 N.E.2d 712; State v. Murphy (Apr. 3, 1997), Cuyahoga App. No. 70400, unreported; State v. Ritchie (Apr. 2, 1997), Lorain App. No. 95CA006211, unreported ("Evidence of a defendant's aggressive and violent behavior toward family members is admissible to prove force where force is an element of the offense."); State v.Rodrigues (Mar. 26, 1996), Franklin App. No. 95APA06-683, unreported;State v. Hammons (Dec. 14, 1995), Shelby App. No. 4-95-3, unreported;State v. Cartee (Dec. 8, 1992), Vinton App. No. 468, unreported; Columbusv. Andrews (Feb. 27, 1992), Franklin App. Nos. 91AP-590, 91AP-880, 91AP-881, unreported; State v. Banks (Aug. 8, 1991), Montgomery App. No. 12300, unreported; State v. Tackett (Oct. 18, 1990), Clark App. No. 2672, unreported; State v. Colvin (Aug. 16, 1989), Hamilton App. No C-880430, unreported.
In the case at bar, we believe that the other acts evidence helped to establish an element of the charged crime. Appellant was charged with a violation of R.C. 2907.02(A)(1)(b), with a specification that he purposely compelled his victim to submit by force or by the threat of force. See R.C. 2907.02(B). Thus, as part of its case the state was required to prove that appellant used force or threatened the use of force. We believe, as did the trial court, that Nunn's testimony concerning appellant's alleged prior sexual conduct helped to demonstrate that appellant purposely compelled the victim (Samantha) to submit by force or threat of force.
R.C. 2901.01 defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person." "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." Schaim, supra, paragraph one of the syllabus.
In State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph one of the syllabus, the Ohio Supreme Court explained the level of force required to be established in a case involving the rape of a child:
 "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (State v. Labus [1921], 102 Ohio St. 26, 38-39, 130 N.E. 161, 164.)"
In cases involving children "coercion is inherent in the parent-child relationship and * * * under these special circumstances `[f]orce need not be overt and physically brutal, but can be subtle and psychological.'Eskridge, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306." Schaim,65 Ohio St.3d at 54-55, 600 N.E.2d at 655. As the court explained in Schaim:
 "Because of the child's dependence on his or her parents, a child of tender years has no real power to resist his or her parent's command, and every command contains an implicit threat of punishment for failure to obey. Under these circumstances, a minimal degree of force will satisfy the elements of forcible rape."
Id., 65 Ohio St.3d at 55, 600 N.E.2d at 655. The Eskridge court similarly observed:
 "`* * * Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose.' State v. Etheridge (1987), 319 N.C. 34, 47, 352 S.E.2d 673, 681."
Id., 38 Ohio St.3d at 59, 526 N.E.2d at 307; see, also, State v.Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763, 767-68.
Consequently, when an alleged perpetrator of the sexual abuse is a person in a position of authority over the child, force may be inferred. See Dye, syllabus ("A person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint."); see, also,Eskridge, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306 (noting that case involved "`a child being told to do something by an important figure of authority, and commanded not to tell anyone about it'" (quoting State v.Fowler (1985), 27 Ohio App.3d 149, 154, 500 N.E.2d 390, 395)).
In the case sub judice, Nunn's testimony helped to demonstrate that appellant used force or threatened the use of force when committing the crimes against Samantha. Nunn testified that appellant (her father) forced her to perform oral sex by telling her that her refusal would result in the denial of various privileges. In a case involving a minor child and a parent or parent-figure, such evidence sufficiently tends to show the element of psychological force. Therefore, this evidence constitutes admissible other acts evidence which helps to establish the element of force or the threatened use of force in a R.C. 2907.02(A)(1)(b) case with an R.C. 2907.02(B) specification. See Smith, supra; See Statev. Poe (Oct. 24, 2000), Franklin App. No. 00AP-300, unreported (evidence of defendant's prior sexual acts admissible to establish element of force); State v. Alston (June 14, 1996), Lake App. No. 94-L-096, unreported (permitting other acts evidence to help establish element of force); State v. Rodrigues (Mar. 26, 1996), Franklin App. No. 95APA06-683, unreported (permitting evidence of the defendant's past sexual activity with his daughter to help prove the element of force in a rape trial); State v. James (Aug. 24, 1995), Hardin App. No. 6-94-18, unreported (permitting evidence of the defendant's past sexual activity with his daughter to help prove the element of force in a subsequent rape trial); State v. Pennington (July 30, 1991), Franklin App. No. 91AP-13, unreported (holding that the defendant's prior acts of violence and coercion helped prove the element of force in rape trial); State v.Colvin (Aug. 16, 1989), Hamilton App. No. C-880430, unreported ("Evidence of other acts of sexual abuse and violence directed toward his stepdaughter and other family members was admissible at trial because it was relevant and material to prove an element of * * * force.").
Appellant asserts that Schaim mandates a different conclusion. InSchaim, the court held:
 "* * * * A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her. (State v. Eskridge
[1988], 38 Ohio St.3d 56, 526 N.E.2d 304, distinguished.)"
Id., paragraph one of the syllabus. In Schaim, the court concluded that parental sexual abuse of an adult child does not create an inference of force, but that parental sexual abuse of a four-year-old child may create an inference of force. The Schaim court thus found insufficient evidence to support the forcible rape conviction against the defendant's twenty-year-old daughter. The court noted its Eskridge holding, but stated that "[t]he same rationale does not apply to an adult." Schaim,65 Ohio St at 55, 600 N.E.2d at 665.
Unlike Schaim, the other acts evidence in the case sub judice involves the sexual abuse of the appellant's live-in girlfriend's minor daughter, not an adult daughter. Moreover, the state's evidence did not consist simply of incestuous relations, but of appellant's method of psychologically compelling the victim to engage in sexual activities.
Consequently, we disagree with appellant that the other acts evidence constituted improper propensity evidence. Rather, we agree with the trial court's conclusion that the evidence tended to show an element of the crime that was a material issue in the trial.
 D
RELEVANCY
Having found that the evidence was not improper character evidence but instead was admissible as tending to prove an element of the crime, we must next consider appellant's claim that the evidence was not relevant because: (1) the other acts evidence did not relate to a material issue in the trial; (2) the other acts evidence did not logically tend to prove the element of force; (3) the other acts occurred too remote in time to have any probative value; and (4) substantial proof did not exist that appellant committed the other acts.
First, we disagree with appellant that the other acts evidence did not relate to a material issue in the trial. As we discussed supra, the other acts evidence related to the element of force or the threat of the use of force. Because the state was required to prove this element beyond a reasonable doubt, it certainly constituted a material issue in the trial.
Appellant nevertheless asserts that like Schaim,[8] "the main issue," in the case at bar was credibility. Appellant asserts that if the jury believed Samantha's testimony, no material issue existed as to whether appellant used force.
We note, however, that the Ohio Supreme Court has pointed out that "`need is irrelevant to an Evid.R. 404(B) objection.'" Bey,85 Ohio St.3d at 491, 709 N.E.2d at 491 (quoting State v. McNeill (1998),83 Ohio St.3d 438, 442, 700 N.E.2d 596, 603). In Bey and McNeill, the court stated that even though the state presents other evidence to establish a matter sought to be proven by other acts evidence, the other acts evidence still is admissible as corroborating evidence. We therefore disagree with appellant's argument that Nunn's testimony was improper other acts evidence simply because it was corroborative.
Second, we disagree with appellant that Nunn's testimony did not logically tend to show that appellant used force against Samantha. It is well-settled that for other acts evidence to be admissible, the other acts evidence need not be "identical" to the crime charged. Instead, other acts evidence is admissible if it "tends to show" a material issue at trial. See Gumm, supra; Flonnory, supra.
As the court observed in Flonnory, 31 Ohio St.2d at 126,285 N.E.2d at 729:
 "Much confusion about R.C. 2945.59 might be avoided if it were observed that nowhere therein do the words `like' or `similar' appear. The statute permits the showing of `other acts' when such other acts `tend to show' certain things. If such other acts do in fact `tend to show' any of those things they are admissible notwithstanding they may not be `like' or `similar' to the crime charged."
See, also, State v. Hill (1992), 64 Ohio St.3d 313, 595 N.E.2d 884.
In the case at bar, although appellant's method of using psychological force to compel Nunn and Samantha differed somewhat, his use of psychological force against Nunn tended to show that he used psychological force against Samantha. See, generally, State v. Jamison (1990),49 Ohio St.3d 182, 187, 552 N.E.2d 180, 186 (noting that dissimilarities between the crime charged and other acts did not render other acts evidence inadmissible).
Third, we disagree with appellant that the other acts about which Nunn testified were too remote to be relevant. A prior act which is "* * * too distant in time or too removed in method or type has no permissible probative value." Snowden, 49 Ohio App.2d at 10, 359 N.E.2d at 91. In the case at bar, the other acts occurred approximately three years from the time of the trial. We do not believe that this time frame is too remote in time to have probative value. See, generally, State v. Blankenship
(Sept. 1, 1993), Summit App. No. 16019, unreported (stating that eight years between the other act and the crime charged is not too remote in time). Moreover, we note that the other acts and the crime charged are not too remote in method or in type so as to be of no probative value. The other acts and the crime charged both involve appellant, a parent to one victim and a parental figure to another, employing coercive tactics to engage the victims in sexual conduct.
Fourth, we further disagree with appellant that substantial proof does not exist to support the conclusion that appellant committed the other acts. Appellant argues that because Nunn's testimony was unsubstantiated and uncorroborated, and because she had a motive to lie,[9] her testimony did not fulfill the substantial proof requirement. We agree with appellant that for other acts evidence to be admissible, substantial proof must exist that the defendant committed the other acts. See, e.g.,Bey, 85 Ohio St.3d at 490, 709 N.E.2d at 490. Substantial proof does not, however, mean proof beyond a reasonable doubt. See Jamison,49 Ohio St.3d at 187, 552 N.E.2d at 185 citing State v. Carter (1971),26 Ohio St.3d 79, 269 N.E.2d 115.
In State v. Sieng (Dec. 30, 1999), Franklin App. No. 99AP-282, unreported, the defendant asserted that substantial proof did not exist that he committed the other act because the uncorroborated testimony of a convicted drug dealer was the only evidence that the defendant committed the other act. The court determined that substantial proof did in fact exist that the defendant committed the other act. The court noted that the convicted drug dealer's uncorroborated testimony presented a question of credibility-an issue reserved to the jury-not an issue of admissibility. The court stated:
 "Generally, the weight to be given to the evidence and the credibility of witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. * * * * Thus, while the state's only proof of the [other act] was not overwhelming and consisted solely of testimony of the perpetrator, the testimony was admissible without corroboration. See State v. Myles (Sept. 18, 1980), Montgomery App. No. CA 6507, unreported (rejecting defendant's argument that similar acts cannot be introduced based solely on uncorroborated testimony of a co-defendant)."
In State v. Henderson (1991), 76 Ohio App.3d 290, 601 N.E.2d 596, the court reached a contrary conclusion. In Henderson, the court determined that a victim's unsubstantiated and uncorroborated allegations of sexual abuse did not fulfill the substantial proof requirement. In Henderson, the defendant was convicted of gross sexual imposition with a specification that he purposely compelled the victim to submit by force or threat of force. To establish the element of force, the victim testified about a past episode of the defendant's sexual misconduct which occurred seven or eight years prior to the trial.
On appeal, the court held that the trial court should have excluded the other acts evidence. In addition to finding that the other acts occurred too remote in time, the court noted that the victim's testimony was uncorroborated. Henderson, 76 Ohio App.3d at 295, 601 N.E.2d at 599-600.
Appellant asserts that like Henderson, in the case at bar Nunn's testimony was uncorroborated. We decline, however, to followHenderson.[10] We, like the Sieng court, do not believe that the substantial proof requirement necessitates that independent evidence corroborate other acts testimony.[11]
Instead, we believe that the substantial proof requirement is satisfied if at least one witness who has direct knowledge of the other act can testify to the other act. The jury may then fulfill its duty and evaluate the witness's testimony and credibility. A jury may, of course, choose to believe all, part or none of the testimony of any witness who offers testimony.
We therefore disagree with appellant's contention that in the instant case the other acts evidence was not relevant.
 E PREJUDICIAL IMPACT
Appellant next asserts that even if the other acts evidence was otherwise admissible, the trial court should have nevertheless excluded the evidence because it was unfairly prejudicial and Evid.R. 403(A) mandated its exclusion. We disagree with appellant.
Evid.R. 403(A) provides: "Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *."
 "Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word `unfair.' Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect."
Weissenberger, Ohio Evidence (2000) 85-87, Section 403.3, quoted in Oberlin v. Akron Gen. Med. Ctr. (2001), 91 Ohio ST.3d 169, 172,743 N.E.2d 890, 893.
The Ohio Supreme Court has noted that the prejudicial impact of other acts evidence is minimized if the trial court properly instructs the jury as to the limited use of this particular evidence. In Bey,85 Ohio St.3d at 491, 709 N.E.2d at 492, the court noted:
 "* * * [T]he prejudicial impact of the `other acts' evidence was minimized because the trial court * * * twice instructed the jury that it could consider the [other act] evidence only on the disputed issue of [the defendant's] identity * * *. Absent evidence to the contrary, we must presume that the jury followed these instructions. See State v. Woodard (1993), 68 Ohio St.3d 70, 73-74, 623 N.E.2d 75, 78."
In the case at bar, we recognize that the other acts evidence certainly constituted evidence adverse to appellant's case. We do not agree with appellant, however, that the other acts evidence was unfairly prejudicial. Nunn's testimony helped to prove an element of the crime. Moreover, we note that the trial court twice instructed the jury that it could consider the other acts evidence only as it related to the element of force or the threat of force. See Bey.
Consequently, we disagree with appellant that the danger of unfair prejudice substantially outweighed the probative value of the other acts evidence.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that the trial court erred by failing to grant appellant's challenge for cause as to a prospective juror. Appellant argues that the trial court should have granted the challenge for cause because the juror repeatedly indicated her inability to be fair and impartial. Appellee contends that after consideration of all of the prospective juror's statements, the trial court did not abuse its discretion by failing to excuse the juror.
During voir dire, prospective juror Schwab stated that both her sister and a friend were sexually assaulted within the past year. Subsequent questioning elicited several equivocal responses. When asked whether she thought that she could set aside her emotions, she responded: "See, I'm not-I can't say yes and I can't say no, because I'm not really sure. I mean, because it still bothers me about my sister. * * * But I mean it'd be hard for me to kind of push it aside." Prospective juror Schwab later stated, however: "I mean I could sit down and listen to the evidence and I could set aside-yeah-how I feel." She also stated that she could base her decision on the evidence adduced at trial and the applicable law. When questioned further regarding her statements as to whether she could set aside her feelings, prospective juror Schwab stated: "It depends on the evidence and stuff." She also stated that she might be able to set aside her feelings depending on what she hears in the courtroom and that the converse also is true-that she may not be able to set aside her feelings if certain things are said. She stated that she did not "know how [she] would react." The prospective juror explained: "I mean, I could sit there and listen to the evidence and say-you know-what I think about it and stuff, but I can't positively tell you yes or no that I will be either way."
The court then interjected to help determine whether the prospective juror could be impartial: "The question is not whether or not you think at this point you would find somebody guilty or not guilty. That's not the question. The question is, can you make that decision-can you set aside the emotional reac[tion] * * *?" Prospective juror Schwab then answered: "See, that's what I'm saying. I'm not sure if I could or not."
As she was questioned further, the prospective juror stated: "I can't say for positive that I could sit there and actually be honest and say I won't let that bother how I feel about the case." When asked whether she could give any assurance that she would be able to set her feelings aside, she responded no. The prosecutor then questioned the prospective juror as follows:
 "I'm a little confused. One minute it sounds like you're saying, `Even though I have strong feelings, I can be fair and impartial and listen to the facts because it's not my sister in the case, it's something else, and I can listen to the facts and apply the law,' and then the next minute I hear you saying you're not sure you can do that.
 Do you know whether you can be fair and impartial? I mean, you can't forget what happened to your sister, but can you decide this case-because it's possible that the State can muster enough evidence to convince you. So we need to know if you can say, `Gee, I hate people who do that but the State just didn't quite get there this time?"
At this point the prospective juror stated that she could be fair and impartial and base her decision solely on the evidence adduced at trial. She also stated that she feels that this case is "totally different from [her] sister's." After considering the prospective juror's statements and the arguments of counsel, the trial court overruled appellant's challenge for cause, stating: "I think that with the clarification that this case is significantly factually different from what happened to her sister that she believes that she could be fair."
After the state had exercised two peremptory challenges and after appellant exercised three peremptory challenges as to the first twelve jurors, Juror Schwab was seated as one of the two alternates. Apparently, appellant's trial counsel did not choose to exercise his one remaining peremptory challenge to excuse Juror Schwab, but instead, chose to excuse the other alternate juror.
We initially note (and appellant recognizes) that appellant has waived any error regarding the trial court's decision not to excuse Juror Schwab for cause. In the case at bar, appellant did not exhaust his peremptory challenges. "[E]rror in the denial of a challenge of a juror for cause cannot be grounds for reversal when the defendant did not exhaust his peremptory challenges." State v. Getsy (1998), 84 Ohio St.3d 180, 191,702 N.E.2d 866, 880 (citing State v. Poindexter (1988), 36 Ohio St.3d 1,5, 520 N.E.2d 568, 572); see, also, State v. Jones (2001),91 Ohio St.3d 335, 338-39, 744 N.E.2d 1163, 1172; Stallings,89 Ohio St.3d at 288, 731 N.E.2d at 170. Moreover, we note that appellant, when exercising his peremptory challenge as to the alternate jurors, chose not to excuse Juror Schwab. Thus, we believe appellant has waived all but plain error associated with the trial court's decision not to excuse juror Schwab for cause.
Appellant contends that the trial court committed plain error in failing to excuse Juror Schwab for cause. Because appellant waived all but plain error, we may only reverse appellant's conviction if the complained of error affects one of appellant's substantial rights. See Crim.R. 52(B); see, also, State v. Slagle (1992), 65 Ohio St.3d 597,603, 605 N.E.2d 916, 924-25; State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus. An alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." Long, paragraph two of the syllabus; State v. Stojetz (1999), 84 Ohio St.3d 452, 455, 705 N.E.2d 329,335; State v. Campbell (2000), 90 Ohio St.3d 320, 342, 738 N.E.2d 1178,1201. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Landrum (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717.
To find plain error, a court must find that: (1) error exists; (2) the error is plain; and (3) the error prejudiced the defendant. State v.Fields (1994), 97 Ohio App.3d 337, 344, 646 N.E.2d 866, 871 (citingUnited States v. Olano (1992), 507 U.S. 725, 732-34, 113 S.Ct. 1770,1777-78, 123 L.Ed.2d 508); see, also, State v. Latson (1999),133 Ohio App.3d 475, 728 N.E.2d 465. Prejudice exists if the error "created a manifest injustice or seriously affected the `fairness, integrity or public reputation of [the] judicial proceedings.'" Fields,97 Ohio App.3d at 344, 646 N.E.2d at 871 (quoting Olano,507 U.S. at 736, 113 S.Ct. at 1779, 123 L.Ed.2d 508). We conduct our review accordingly.
Crim.R. 24(B) governs challenges for cause in a criminal case. Crim.R. 24(B)(9) provides that jurors may be challenged as follows:
 That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
"Trial courts have discretion in determining a juror's ability to be impartial." State v. Cornwell (1999), 86 Ohio St.3d 560, 562,715 N.E.2d 1144, 1149 (citing State v. Williams (1983), 6 Ohio St.3d 281,288, 452 N.E.2d 1323, 1331). "A prospective juror challenged for cause should be excused `if the court has any doubt as to the juror's being entirely unbiased.'" Id. (quoting R.C. 2313.43). A reviewing court should not disturb a trial court's decision regarding a challenge for cause unless the ruling "`is manifestly arbitrary * * * so as to constitute an abuse of discretion."' State v. Stallings (2000), 89 Ohio St.3d 280,287, 731 N.E.2d 159, 169-70 (quoting State v. Tyler (1990),50 Ohio St.3d 24, 31, 553 N.E.2d 576, 587). Moreover, "`deference must be paid to the trial judge who sees and hears the juror.'" Id.,89 Ohio St.3d at 288, 731 N.E.2d 159, 170 (quoting Wainwright v. Witt (1985),469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841).
"While fairness requires that jurors be impartial, jurors need not be totally ignorant of the facts and issues involved." State v. Jones
(2001), 91 Ohio St.3d 335, 338, 744 N.E.2d 1163, 1172. In Jones, for example, the court found no error with the trial court's failure to excuse a juror who stated that he was biased against the defendant when the juror also stated that he would decide the case based only upon the evidence and that he would accord the defendant the usual presumption of innocence.
In the case sub judice, we do not believe that the trial court abused its discretion by failing to excuse Juror Schwab for cause. Although Juror Schwab expressed her strong emotions about her sister's ordeal, she also stated that she could be fair and impartial and that she would decide the case based only upon the evidence. See id.
Additionally, we disagree with appellant that the presence of one of the impaneled jurors, Juror Partlow, deprived appellant of a fair and impartial jury. Appellant complains that because Juror Partlow knew the victim, the juror's ability to be fair and impartial was compromised. We note, however, that the trial court, with defense counsel present, inquired about Juror Partlow's ability to be fair and impartial. Both the trial court and appellant's trial counsel expressed satisfaction with the juror's responses. Furthermore, "[w]hether a prospective juror knew the victim of an offense * * * is not, per se, a basis for dismissal for cause." State v. Sheppard (1998), 84 Ohio St.3d 230, 235, 703 N.E.2d 286,292. We therefore find no abuse of the trial court's discretion.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III
In his third assignment of error, appellant argues that he was denied the effective assistance of trial counsel. Appellant contends that trial counsel was ineffective for failing to: (1) remove a biased juror; and (2) object to an "incomprehensible" jury instruction regarding other acts evidence. We disagree with appellant.
In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness. Statev. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476, cert. den. (1988),488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550; Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164.
The Sixth Amendment right to counsel protects "the fundamental right to a fair trial." Id., 466 U.S. at 684, 104 S.Ct. 2052, 80 L.Ed.2d 674. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id., 466 U.S. at 685, 104 S.Ct. 2052,80 L.Ed.2d 674. Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair." Id., 466 U.S. at 685, 104 S.Ct. 2052,80 L.Ed.2d 674. Therefore, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., 466 U.S. at 685-86,104 S.Ct. 2052, 80 L.Ed.2d 674.
To establish that defense counsel's conduct so undermined the functioning of the adversarial process, a defendant must establish: (1) that "counsel's performance was deficient"; and (2) that the "deficient performance prejudiced the defense." Id., 466 U.S. at 687,104 S.Ct. 2052, 80 L.Ed.2d 674; see, also, State v. Murphy (2001), 91 Ohio St.3d 516,538, 747 N.E.2d 765, 794. Counsel's performance is deficient if he "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674; see, also, State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, cert. den. (1990), 497 U.S. 1011,110 S.Ct. 3258, 111 L.Ed.2d 768 (stating that counsel's performance is deficient if counsel substantially violated one of his essential duties to his client); State v. Peeples (1994), 94 Ohio App.3d 34, 44,640 N.E.2d 208, 215 (stating that counsel's performance is deficient if it "raises compelling questions concerning the integrity of the adversarial process"). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. Murphy, supra;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
A reviewing court, when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips (1995),74 Ohio St.3d 72, 85, 656 N.E.2d 643, 658 (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, a reviewing court "must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065,80 L.Ed.2d 674. As the Strickland Court stated, a reviewing court:
 "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"
Id., 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.
Once a defendant overcomes the strong presumption that trial counsel's performance was reasonable, the defendant must establish that counsel's deficient performance prejudiced the defense. Prejudice exists if the deficient performance deprived the defendant of a trial "whose result is reliable." Id., 466 U.S. 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, "to establish prejudice, the defendant must show that `there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" State v. Fears (1999),86 Ohio St.3d 329, 346, 715 N.E.2d 136, 153, cert. denied (2000),529 U.S. 1039, 120 S.Ct. 1535, 146 L.Ed.2d 349 (quoting State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus); see, also, Murphy, supra.
After our review of the record in the case sub judice, we do not believe that appellant has overcome the strong presumption that his trial counsel's conduct constituted sound trial strategy. Moreover, assuming,arguendo, that trial counsel's performance was deficient, we do not believe that trial counsel's alleged errors deprived appellant of a trial whose result is reliable; that is, we conclude that a reasonable probability does not exist that the result of the trial would have been different but for counsel's alleged errors.
First, with respect to appellant's argument that trial counsel rendered ineffective assistance when he failed to request Juror Partlow's removal, we note that "[d]ebatable trial tactics do not constitute ineffective assistance of counsel." State v. McNeill (1998),83 Ohio St.3d 438, 449, 700 N.E.2d 596, 608. Moreover, as we noted in our discussion of appellant's second assignment of error, simply because a juror knows the victim does not require a conclusion that the juror cannot be fair and impartial. See Sheppard, supra. Thus, we find that appellant's claim that trial counsel rendered ineffective assistance by failing to request Juror Partlow's removal is meritless.
Second, we disagree with appellant that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding the other acts evidence.
Appellant asserts prejudice resulted from trial counsel's failure to object to the following "incomprehensible" jury instruction that the trial court gave prior to permitting Nunn to testify about the prior sexual acts:
 "* * * [T]he evidence which has been requested is admitted for a limited purpose. It is not intended to be and cannot be considered value of proof of bad character or that he is more likely to commit the offenses charged because he may have committed similar or related offenses in the past. This evidence cannot and should not be considered for that purpose.
 This evidence may be used by you to assist in making a determination as to whether or not the defendant used force or threat of force, if such you find, with purpose to compel [the victim] to engage in sex[ual] conduct with him, if such you find. It relates only to the issue of purpose as an additional finding of the offense of rape, if you find from other evidence, and only from other evidence, that the defendant engaged in sexual conduct with [the victim]."
At the close of the evidence, the trial court further instructed the jury as follows with respect to the other acts evidence:
 "Evidence has been admitted that the defendant may have committed criminal acts other than those set forth in the indictment. This evidence has been admitted for a limited purpose. It is not intended to be, and cannot be, considered by you as proof of bad character of the defendant and that he was more likely to commit the offenses charged because he may have committed similar or related offenses in the past. The evidence cannot, and should not, be considered for this purpose. The evidence may only be used by you to assist you in making a determination of whether or not the defendant used force or the threat of force, if is such you find, with the purpose to compel [the victim] to engage in sexual conduct with him, if such you find. It relates only to the issue of purpose as to the additional finding to the offense of rape, if you find from other evidence, and only from other evidence, that the defendant engaged in sexual conduct with [the victim]."
Appellant argues that the forgoing instructions were incomprehensible, in part, because the other acts evidence "could not be admitted for the stated purpose it was admitted * * * and thus, no appropriate instruction, could have been properly crafted." As we stated in our discussion of appellant's first assignment of error, however, we concluded that the trial court properly admitted the other acts evidence. Thus, we find no error with the trial court giving a jury instruction relating to the other acts evidence.
Appellant further asserts that the instructions "fail to clarify how [the other acts] evidence goes to the element of `purpose to compel with force or threat of force.'" We disagree with appellant. We believe that the trial court crafted an appropriate instruction regarding the limited purpose of the other acts evidence. The trial court informed the jury that the other acts evidence could not be used as proof of appellant's guilt. The trial court adequately advised the jury that Nunn's testimony concerning her father's method of coercing her into performing oral sex related only to whether he used force or threatened the use of force when committing the offenses against Samantha. Thus, we do not believe that appellant's trial counsel provided ineffective assistance by failing to object to the trial court's jury instructions.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Evans, J.: Concur in Judgment Opinion
[2] R.C. 2907.02(B) provides in relevant part as follows:
 Whoever violates this section is guilty of rape, a felony of the first degree. * * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.
[3] As Weissenberger explains in his treatise on Ohio Evidence:
 "`[Extrinsic act evidence is excluded] not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal-whether judge or jury-is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take proof of it as justifying a condemnation irrespective of guilt of the present charge.'"
Weissenberger, Ohio Evidence (2001) 117-18, Section 404.22 (alteration in original) (quoting 1A Wigmore Section 58.2).
[4] In Schaim, the defendant had argued that the trial court erred by refusing to sever the charges. The defendant asserted that by not severing the charges, the jury heard other acts evidence that would not have been admissible were each charge tried separately.
[5] Additionally, as we observed in State v. Miller (Oct. 14, 1993), Meigs App. No. 92 CA 496, unreported, "some authority [exists] indicating that other sexual acts are admissible to show a passion or propensity for unusual or abnormal sexual relations." We further noted, however, that "any diluted `special exception' for sexual misconduct cases has been sharply criticized."
[6] Although the court relied upon the scheme, plan, or system exception to allow introduction of the evidence, it appears that the court instead could have relied upon the exception that permits evidence of other acts to establish an element of the crime. See our discussioninfra.
[7] In State v. McDaniels (Nov. 9, 1993), Vinton App. No. 487, unreported, we discussed the intent exception as follows:
 "Another permissible purpose under Evid.R. 404(B) exists in this case. Although not entirely clear from the record, it appears that appellant was attempting to claim that she was merely present when the charged offense occurred, and she denied having the mens rea
or intent. Uncharged misconduct evidence is admissible to prove guilty knowledge and disprove any assertion of being `merely present' or an `innocent dupe.' Imwinkelried, Uncharged Misconduct Evidence (1992) 51, Section 5:25. This is known as the doctrine of chances and its rationale has been described as follows:
 "The reasoning underlying the fourth theory is that it is unlikely that the defendant would be repeatedly innocently involved in the similar suspicious situations. Innocent persons occasionally become enmeshed in suspicious circumstances, but that occurs rarely. When the defendant receives stolen goods often enough, the probability is that sooner or later the true owner or the police may contact the defendant. If the defendant receives counterfeit bills often enough, the likelihood is that sooner or later a merchant the defendant attempts to pass the bills to will detect the counterfeit. Perhaps the defendant could innocently receive stolen property or counterfeit bills once; but as the number of incidents increases, it becomes less plausible that the defendant was repeatedly victimized in the same fashion. This theory is another application of Wigmore's theory of improbability under the doctrine of chances. Under Wigmore's theory, the uncharged misconduct tends to negate a "mere non-nefarious happen-stance."
Id. (Footnotes omitted.")
[8] As we noted earlier under our discussion of the scheme, plan, or system exception, the Schaim court noted:
 "The material issue regarding the rape charges was whether the defendant had sexual intercourse with Rhonda as described in her testimony and, if so, whether he used physical force or the threat of physical force to accomplish that goal. In short, the main issue was credibility. There was no dispute that if Rhonda was telling the truth, her father was the perpetrator. Under theses circumstances, identity is not a material issue in the case. Intent was also not a material issue in dispute, and even if it had been, testimony regarding touching one daughter's buttock is not relevant to prove the intent required to commit forcible rape."
Schaim, 65 Ohio St.3d at 61, 600 N.E.2d at 669.
[9] Appellant submits that Nunn had a motive to lie about the sexual abuse allegations because appellant helped secure an unrelated criminal conviction against her husband.
[10] We note that in cases involving rape or gross sexual imposition, R.C. 2907.02(D) and R.C. 2907.05(D) permit evidence of the defendant's past sexual activity with the victim and does not require corroboration.
[11] Our research has revealed no other Ohio case that has followedHenderson and imposed a requirement that other acts evidence be corroborated.