The STATE of Ohio, Appellee,

v.

LATSON, Appellant.

[Cite as *State v. Latson* (1999), 133 Ohio App.3d 475.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Decided Oct. 12, 1999.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Elizabeth A. Hickey,* Assistant Prosecuting Attorney, for appellee.

*James D. Draper,* Cuyahoga County Public Defender, and *Darin Thompson,* Assistant Public Defender, for appellant.

KILBANE, Judge.

Appellant Michael Latson challenges the determination by Judge Michael J. Corrigan ordering him to serve consecutive sentences without first determining whether his crimes were allied offenses of similar import. The state contends that Latson waived his right to appeal when he made no objection on that subject at the sentencing and that if any error arose, it was harmless because the facts clearly support the holding that aggravated robbery is a separate offense from kidnapping. We agree with Latson, vacate the conviction, and remand for a hearing on the allied-offense issue.

On February 24, 1997, Latson, then seventeen years and ten months of age, was charged in with a two-count complaint. Count One alleged that on February 14, 1997, Latson had a weapon on or about his person or under his control and did display, brandish, indicate possession of, or use the weapon in stealing $30 in cash and attempting to steal a car from Courtney Daniels, thereby violating R.C. 2911.01(A)(1), aggravated robbery. This count was coupled with a firearm specification. The second count alleged that Latson, on that same day, violated R.C. 2921.331(B) by failure to comply with an order or signal of a police officer,

when he willfully eluded and failed to yield to the order or signal of the officer in his attempt to flee after commission of his felony.

At a mandatory hearing on March 24, 1997, before Cuyahoga Juvenile Court Judge John Gallagher, testimony was presented. Courtney Daniels, the victim, stated that on February 14, 1997, she had been shopping at Euclid Square Mall and was returning to her car with her arms full of purchases, including two Valentine's Day balloons and two other novelty gifts. After unlocking the door on the driver's side and while attempting to enter, she felt a gun being held to her head and was ordered to "move over, bitch, move over. Hurry up, move over. Get in the passenger seat * * *." Daniels promptly complied, and Latson, after giving her balloons and packages to his accomplice, got in the driver's seat, closed the door, and demanded that Daniels hand over her money. Daniels gave Latson all her money, a total of $30, and was prompted to give him her purse when he contended that she was holding back yet more money. Latson then rifled through her purse, taking only an unopened pack of cigarettes. Latson next demanded the car keys, and when Daniels refused he replied, "Are you stupid, bitch? I've got a gun to your head." Daniels claimed that she then heard the gun click and felt the gun being pressed even harder against her head.

Daniels stated that she then picked up her car keys from the floor and fled out the passenger door. Latson got out through the driver's door, ran, and got into a gold Ford Taurus sedan that was waiting for him. Daniels ran after the fleeing automobile and, as a consequence, was able to give a description of the vehicle to the Euclid police.

A gold Ford car, containing two males and balloons, was observed on westbound I–90 by Officer Haddock. It was pursued, and after a protracted chase during which a seventy-two-year-old female sustained serious injuries in a collision with a police vehicle, Latson and the driver of his vehicle were apprehended.

At the conclusion of the juvenile court hearing, Judge Gallagher found that the state had established probable cause and ordered Latson to be transferred to the jurisdiction of the common pleas court to be tried as an adult pursuant to Juv.R. 30 and R.C. 2151.26.

On April 15, 1997, Latson was indicted for (1) aggravated robbery, (2) felonious assault, (3) kidnapping, (4) aggravated vehicular assault, (5) failure to comply, and (6) attempted aggravated murder. All counts included a firearm specification alleging that Latson had a firearm in his possession and used that firearm to commit the offenses.

On June 4, 1997, Latson entered a plea of guilty on Count One, aggravated robbery, with a firearm specification, and Count Three, kidnapping, also with a

firearm specification. Count Three was amended to state that Daniels was "left in a safe place unharmed." The remaining counts were nolled.

On June 30, 1997, Latson was sentenced to ten years on Count One, eight years on Count Three, and three years pursuant to the respective firearm specifications, with the sentences to run consecutively.

Latson assigns one error for our review:

"The trial court erred in sentencing Mr. Latson to consecutive sentences without first determining whether the offenses were allied offenses of similar import pursuant to R.C. 2941.25, the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution."

Latson argues that while he pleaded guilty to the charges of aggravated robbery and kidnapping, they were potentially allied offenses of similar import and he should be convicted of, and sentenced for, only one crime. He contends that the judge should have inquired into the nature of the offenses before sentencing pursuant to R.C. 2941.25.

The state contends that by failing to raise the issue at the time of sentencing, he waived his right to assign it as error. Further it claims that any failure to address the issue at sentencing is harmless error and cites *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640.

The state misapprehends the facts, background, and holding of *Comen* when applied to Latson. In *Comen,* following a jury trial, the defendant was given *concurrent* sentences for what he claimed to be allied offenses. The Franklin County Court of Appeals, in *State v. Comen* (January 5, 1989), Franklin App. No. 88AP–660, unreported, 1989 WL 725, addressed the issue of allied offenses although no objection had been raised at the trial level, and found, through the transcript, that aggravated burglary and receiving stolen property were clearly not allied offenses and denied the assignment of error.

In the appeal to the Supreme Court, Justice Douglas declined to address the same issue, stating:

"Notwithstanding the fact that appellant raised this issue before the court of appeals, this court need not address this proposition of law as appellant failed to object to the convictions or sentencing at the trial level. Appellant's failure to raise this issue in the trial court constitutes a waiver of the error claimed. See *State v. Williams* (1977), 51 Ohio St.2d 112, 116–117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367." (Citations omitted.) 50 Ohio St.3d at 211, 553 N.E.2d at 645–646.

In *Williams* there was an attempt to introduce, at the Supreme Court level, assignments of error not raised at either the trial or appellate level. Chief Justice O'Neill stated:

"This court need not address this proposition of law as the appellant failed to object to the jury instructions. He likewise failed to raise any of these issues in the Court of Appeals. This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at the time such error could have been avoided or corrected by the trial court." *Id.*

Chief Justice O'Neill, however, went on to find a miscarriage of justice in the case.

The *Comen* case, therefore, stands not for the proposition that an appellate court is prohibited from reviewing an issue not introduced at the trial level, but for the proposition that an appellate court has the discretion to accept such an issue and determine its merits. "Need not address" does not mean "cannot address."[1] Crim.R. 52(B) allows us the discretion to address plain error or defects affecting a defendant's substantial rights.[2]

 "In plain error analysis, the court determines prejudice by asking whether the error created a manifest injustice or seriously affected the 'fairness, integrity or public reputation of judicial proceedings.' " *State v. Fields* (1994), 97 Ohio App.3d 337, 646 N.E.2d 866, quoting *United States v. Olano* (1993), 507 U.S. 725, 732–735, 113 S.Ct. 1770, 1777–1778, 123 L.Ed.2d 508, 518–520. See, also, *State v. Waddell* (1996), 75 Ohio St.3d 163, 661 N.E.2d 1043; *State v. Gideons* (1977), 52 Ohio App.2d 70, 77, 6 O.O.3d 50, 53–54, 368 N.E.2d 67, 72. A reviewing court must determine (1) whether error is present, (2) whether it is plain error, and (3) whether the defendant was prejudiced by this error. *Fields, supra.* This court, however, is mindful that "notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest

---

1. *State v. Hawkins* (1993), 66 Ohio St.3d 339, 612 N.E.2d 1227.

2. When this court has found that an issue was waived, we have, nevertheless, clarified why the defendant's substantial rights were not violated. In *State v. Perkins* (1994), 93 Ohio App.3d 672, 639 N.E.2d 833, we pointed out that we had previously held that tying a victim to facilitate an escape was a kidnapping separate from the offense of robbery. In *State v. Williams* (1995), 105 Ohio App.3d 471, 664 N.E.2d 576, we noted that we had consistently held that trafficking in drugs by preparing for shipment was not an allied offense with possession. See, also, *State v. Powell* (1993), 87 Ohio App.3d 157, 621 N.E.2d 1328. In *State v. Hamann* (1993), 90 Ohio App.3d 654, 630 N.E.2d 384, it was found that thirty theft offenses against distinct victims at different times could not be considered allied offenses. We found that aggravated burglary and attempted murder were not allied offenses in *State v. Lockhart* (Sept. 16, 1999), Cuyahoga App. No. 74113, unreported, 1999 WL 728354. Indeed, in *State v. Smith* (Dec. 10, 1992), Cuyahoga App. No. 61464, unreported, 1992 WL 369273, in holding that forgery and uttering were allied offenses of similar import, we found that failure to raise the issue before the trial court constituted ineffective assistance of counsel and remanded the case for resentencing.

miscarriage of justice." *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.

The constitutions of both the United States and Ohio prohibit a criminal defendant from being convicted two times for the same offense. R.C. 2941.25 is the statute embodying that protection. It provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

The elements of the crimes to which Latson pleaded guilty should first be compared in the abstract. Aggravated robbery, R.C. 2911.01, is essentially theft and inflicting or attempting to inflict serious physical harm while brandishing a loaded gun. Kidnapping can be (1) restraining a victim's liberty to facilitate the theft, R.C. 2905.01(A), or (2) restraining a victim's liberty under circumstances that create a substantial risk of serious physical harm, R.C. 2905.01(B). After aligning the elements, the question then becomes, do they correspond to such a degree that the commission of one crime—the aggravated robbery—will result in the commission of the other—kidnapping? If the crimes are allied offenses of similar import, a defendant cannot be convicted of both unless the facts reveal that they were committed separately or with separate animus; in other words, was the intention for each crime different? *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699; *State v. Jones* (1997), 78 Ohio St.3d 12, 676 N.E.2d 80. See, also, *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816.

In *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, the following guidelines were given to determine whether kidnapping and another crime are committed with a separate animus as to each.

"(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

"(b) Where the transportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the

underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." *Id.,* at syllabus. See, also, *State v. Tinch* (1992), 84 Ohio App.3d 111, 616 N.E.2d 529.

Robbery and kidnapping are clearly potentially allied offenses of similar import. In *Logan,* the court went on to state:

"Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, *a priori,* commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime. For example, when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery. Under our statutes, he simultaneously commits the offense of kidnapping by forcibly restraining the victim to facilitate the commission of a felony. In that instance, without more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses." 60 Ohio St.2d at 131–132, 14 O.O.3d at 376–377, 397 N.E.2d at 1349–1350.

This court held in *State v. Kent* (1980), 68 Ohio App.2d 151, 22 O.O.3d 223, 428 N.E.2d 453, *when accepting a plea,* a trial court *must* conduct a hearing before entering a judgment of conviction to determine whether R.C. 2541.25 is applicable, regardless of whether anything was said by either the prosecutor or defendant. More recently, in *State v. Stephens* (June 10, 1993), Cuyahoga App. Nos. 62554, 62555, 62556, unreported, 1993 WL 204614, this court stated:

"When a defendant enters a guilty plea to multiple offenses of similar import and the trial court accepts the plea, the trial court must conduct a hearing before entering a judgment of conviction and make a determination as to whether there were allied offenses of similar import committed with a single animus; whether there were offenses committed separately or with a separate animus as to each offense. If the offenses are found to be allied offenses, a judgment of conviction may be entered for only one offense. If the offenses are found not to be allied offenses, a judgment of conviction may be entered for each offense."

The question then becomes whether the failure to hold a hearing to determine the applicability of the allied-offense statute is plain error. If the trial judge fails to conduct the proper hearing, the judgment of conviction must be reversed, and the matter remanded, but only for the limited purpose of conducting a proper hearing to determine whether the defendant should be sentenced for one or all of the offenses to which he pleaded guilty. *Kent, supra.*

The state suggests that Latson's conduct in holding Daniels at gunpoint, threatening to kill her, demanding more money, terrorizing her, and apparently intending to drive off with her in the car was not incidental to the aggravated

robbery. It contends that the risk Daniels faced was separate from and greater than that involved in a "mere forceful purse-snatching." It cites *State v. Smith* (Sept. 29, 1994), Cuyahoga App. No. 65636, unreported, 1994 WL 530895, and *State v. Wright* (Aug. 22, 1991), Cuyahoga App. No. 58953, unreported, to buttress its position.

*Smith*, an appeal from a jury trial during which no objection was made to the potential allied offenses of kidnapping and aggravated robbery, bears little resemblance to the facts *sub judice*. Moreover, the sentences for the kidnapping and aggravated robbery were concurrent. In *Smith* a couple was accosted by Smith, using a sawed-off shotgun, and another male with a handgun. Smith demanded money, and when the other man threatened to shoot Mr. Phillips, Ms. Connelly offered all her money, totaling a little over $5. Smith walked Connelly down the street holding the shotgun to her head; the other gunman took Phillips in the opposite direction. Smith yelled to his cohort, "Should I do her here?" Connelly pleaded with Smith, who then took her to Phillips and the other gunman. Smith informed his partner that he could not kill Connelly, and the two men then fled.

In *Wright*, another appeal from a jury trial, a night auditor was accosted in her office by Wright, brandishing a knife. He grabbed her, pushed her to the floor and jabbed her lightly with the knife, forced her to take him to the cash register, and jabbed her again to urge her to open the drawer and remove bundles of cash. He then returned her to her office, pushed her to the floor, and tied her hands behind her back with a computer cord to facilitate his escape.

In each of those cases, this court had little trouble finding where the robbery ended and the kidnapping began. The failure of the trial judges in those cases to conduct a *voir dire* on allied offenses was, therefore, not plain error. In the instant case, however, the testimony of Daniels at the juvenile court hearing appears to indicate that the restraint was not more than was necessary to complete the robbery. While it is true that Daniels's escape foiled whatever further plans Latson may have had, it does not obviate the need for a comparison of the elements of the crimes and, if necessary, a determination of separate animus required under R.C. 2941.25 and *Rance, supra*.

The assignment of error is well taken. The judgment of the conviction is reversed, and the matter is remanded for the limited purpose of conducting a proper hearing to determine whether Latson should be sentenced according to R.C. 2941.25. *State v. Kent, supra*.

*Judgment reversed*
*and cause remanded.*

KARPINSKI, J., concurs.

DYKE, P.J., concurs separately.

DYKE, P.J., concurring.

I write separately to emphasize that as a general rule it is not my practice to name the trial judge in my appellate opinions.

On appeal, our focus is whether particular assignments of error are meritorious and whether reversible error has occurred. App.R. 12. Thus, the focus of our review is the judicial rulings that are brought before us. In completing our review, we are to apply a body of orderly procedures and decisional law. Personal reference is not relevant.

Moreover,

"The bounds of the law in a given case are often difficult to ascertain. The language of legislative enactments and judicial opinions may be uncertain as applied to varying factual situations. The limits and specific meaning of apparently relevant law may be made doubtful by changing or developing constitutional interpretations, inadequately expressed statutes or judicial opinions, and changing public and judicial attitudes. Certainty of law ranges from well-settled rules through areas of conflicting authority to areas without precedent." Code of Professional Responsibility, EC 7–2.

In short, we are not a court of last resort and a pronouncement from this court that error has occurred may in fact be overturned by the Supreme Court in subsequent review.

Finally, we must be mindful that judges are not wholly free to defend themselves and that focusing upon the judge rather than the decision itself could unfairly affect public confidence in the judicial system and could appear to be an expression of partiality.