[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] We note that the parties' appellate briefs spell appellant's first name as Randal. The trial court record spells appellant's first name as Randall. We will use the spelling as it appears in the trial court record.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. The trial court found Randall L. Hapney, defendant below and appellant herein, guilty of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). Appellant raises the following assignments of error:
 {¶ 2} FIRST ASSIGNMENT OF ERROR:
 {¶ 3} "THE TRIAL COURT ERRED BY OVERRULING THE MOTION TO SUPPRESS IN THAT THE OFFICER'S SEIZURE VIOLATED THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I, OF THE OHIO CONSTITUTION."
 {¶ 4} SECOND ASSIGNMENT OF ERROR:
 {¶ 5} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION IN LIMINE REGARDING PRIOR OFFENSES IN VIOLATION OF THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I, OF THE OHIO CONSTITUTION."
 {¶ 6} THIRD ASSIGNMENT OF ERROR:
 {¶ 7} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO SUPPRESS IN VIOLATION OF THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I, OF THE OHIO CONSTITUTION."
 {¶ 8} On May 5, 2001, at approximately 12:30 a.m., appellant was traveling on U.S. Route 50 in Belpre, Ohio. At the same time, Ohio State Highway Patrol Trooper Stephen W. Roe was driving on the right lane up the ramp from Main Street in Belpre to head West on Route 50.
 {¶ 9} Trooper Roe first observed appellant's vehicle by the Clement Road intersection. When he saw appellant's vehicle:
 {¶ 10} "There were two different times that [appellant's vehicle] went off just across the right side fog line. Then he changed lanes — he did signal, changed lanes, went over into the left lane, and as he approached the intersection of Bran Road, slowed, and as I noted in my notes there, I thought he was going to turn, there was no signal, he was still in the passing lane, but all of a sudden he continues through the intersection and almost drives off the left side fog line, across it, almost like he was going to go into the median, comes back into his lane. I'm now switching lanes in behind him, he hits his signal, comes back in the right lane, and I made the traffic stop."
 {¶ 11} Once Trooper Roe stopped appellant's vehicle, he asked appellant to come to the patrol car. Upon interacting with appellant, "[i]t was * * * very obvious to [the trooper] that [appellant] was under the influence of alcohol and/or drugs." Trooper Roe noticed that appellant's eyes were bloodshot and glassy and that an odor of alcohol emanated from appellant's breath.
 {¶ 12} As appellant and the trooper walked to the patrol car, Trooper Roe asked appellant if he had anything on him that could "hurt the trooper." Appellant stated that he did not. Trooper Roe, however, noticed a bulge in appellant's left front pants pocket.
 {¶ 13} Trooper Roe then asked appellant if the trooper could perform a pat down search. Appellant did not respond immediately, and Trooper Roe proceeded to perform a pat down search. Upon patting down the bulge in appellant's pocket, "there was a large, round cylinder object, as well as a[n] elongated object as well [sic]."
 {¶ 14} Appellant then removed a white film container from his pocket. The trooper asked appellant to hand him the film container so that the trooper could see what was inside. Appellant, however, did not want to hand the container to the trooper. Appellant pulled the container out of his pocket and placed his hand by his side. The trooper again requested appellant to hand over the container. The trooper reached towards the container, placed his hand on appellant's hand, and appellant then released the container. Trooper Roe opened the film container and he discovered marijuana.
 {¶ 15} After finding marijuana inside the container, Trooper Roe asked appellant to put his hands on the patrol car. The trooper then removed from appellant's pocket a "bone, deer antler, smoke pipe."
 {¶ 16} Trooper Roe placed appellant in the patrol car and radioed the dispatcher. After a record check, Trooper Roe discovered that appellant had three prior driving while under the influence convictions, two of which had occurred in the previous six years.
 {¶ 17} Trooper Roe then arrested appellant and charged him with operating a motor vehicle while under the influence of drugs/alcohol, possession of marijuana, and possession of drug paraphernalia.
 {¶ 18} Subsequently appellant filed a motion to suppress evidence. Appellant argued that Trooper Roe violated his Fourth Amendment right to be free from unreasonable search and seizure for the following two reasons: (1) the officer lacked reasonable suspicion to stop appellant's vehicle; and (2) the officer exceeded the permissible bounds of a pat down search for weapons.
 {¶ 19} On August 21, 2001, the trial court held a hearing to consider appellant's motion to suppress evidence. At the hearing, Trooper Roe testified that he decided to stop appellant because appellant "almost drove into the median." The trooper stated that before he decided to stop appellant's vehicle, he had observed appellant's vehicle travel across the right fog line by about one to one and one-half feet and travel across the left fog line by about two to three feet, "almost to the very edge of the asphalt." With respect to the pat down search, the officer admitted that nothing in particular made him feel threatened by appellant. The officer explained, however, that he could observe a bulge in appellant's pocket. The officer further testified that he "think[s] anybody is a threat."
 {¶ 20} The trial court overruled appellant's motion to suppress evidence. The court determined that the officer lawfully stopped appellant's vehicle and that the pat down search was lawful. The court explained:
 {¶ 21} "In regard to the pat down search, it was 12:30 a.m., the videotape does indicate it was quite dark there on the side of the highway. * * * [The trooper] testified that it's his policy to pat down people before he puts them in his cruiser. That only makes common sense. He may not have articulated in great deal the concern for safety, but a pat down would be warranted, especially when you see a bulge in somebody's pocket, a hard object."
 {¶ 22} The court further reasoned that even if the pat down search was unjustified, the trooper inevitably would have discovered the marijuana and the pipe. The court noted that the trooper believed that appellant was intoxicated. The court concluded that the trooper most likely would have arrested appellant for driving while under the influence. The court determined that if the trooper had arrested appellant for driving while under the influence and the trooper would have discovered the marijuana and the pipe when performing a search incident to the custodial arrest.
 {¶ 23} On October 16, 2001, the trial court held a jury trial. Prior to trial, appellant requested the trial court through his motion in limine to exclude the videotape of the traffic stop. Appellant asserted that the videotape would unduly prejudice his defense because, inter alia, the dispatcher can be heard referring to appellant's prior OMVI convictions and appellant states that he has "been through this before." The trial court overruled appellant's motion in limine.
 {¶ 24} After hearing the evidence, the jury returned guilty verdicts. Appellant filed a timely notice of appeal.
 I {¶ 25} Because appellant's first and third assignments of error both address the propriety of the trial court's decision overruling his motion to suppress evidence due to alleged Fourth Amendment violations, we will address the assignments of error together.
 {¶ 26} In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence as it related to the officer's pat down search. Appellant argues that the law enforcement officer violated appellant's Fourth Amendment right to be free from unreasonable searches. Specifically, appellant contends that the trooper's pat down search exceeded the permissible bounds of a pat down search for weapons. Appellant claims that the officer did not have reason to believe that appellant was armed and dangerous.
 {¶ 27} In his third assignment of error, appellant contends that the trial court erred by overruling his motion to suppress evidence as it related to the initial stop of his vehicle. Appellant argues that the trooper violated his Fourth Amendment right to be free from unreasonable seizures. In particular, appellant asserts that the officer lacked reasonable suspicion of criminal activity to justify a stop of appellant's vehicle.
 A STANDARD OF REVIEW {¶ 28} We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Dunlap, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Dunlap, supra; Long, supra; State v. Medcalf
(1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v. Arvizu (2002), 534 U.S. 266,122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
 B {¶ 29} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Arvizu, 122 S.Ct. at 750; Terry v. Ohio (1968),392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katzv. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507,19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner, 87 Ohio St.3d 295, 297, 1999 Ohio 68,720 N.E.2d 507; Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 C {¶ 30} One exception to the general prohibition against a warrantless search is a Terry pat-down search for weapons. See, e.g.,Terry. Pursuant to the rule set forth in Terry, a law enforcement officer may stop an individual and may conduct a limited search for weapons if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.Terry, 392 U.S. at 21; State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271; State v. Venham (1994), 96 Ohio App.3d 649, 654,645 N.E.2d 831. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 135 L.Ed.2d 89; Terry, supra.
 {¶ 31} Once an officer has lawfully detained an individual pursuant to Terry, the officer "may search only for weapons when conducting a pat down of the suspect." State v. Evans, 67 Ohio St.3d 405,414, 1993-Ohio-186, 618 N.E.2d 162. The scope of a Terry search is:
 {¶ 32} "a narrowly drawn authority to permit a reasonable search for weapons for the protection of a police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27.
 {¶ 33} The purpose of a Terry "`search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence.'" Evans, 67 Ohio St.3d at 408 (quoting Adams v.Williams (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923,32 L.Ed.2d 612). A Terry pat-down search is limited in scope to discovering weapons that might be used to harm the officer "and cannot be employed by the searching officer to search for evidence of a crime." Evans,67 Ohio St.3d at 414. Thus, a Terry search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry,392 U.S. at 29.
 {¶ 34} Appellant asserts that the foregoing principles demonstrate that Trooper Roe's search transgressed the limited nature of a Terry
search for weapons. Appellant claims that the trooper lacked reason to believe that appellant was "armed and dangerous" and, therefore, the officer lacked a lawful basis to conduct a pat down search for weapons. We disagree with appellant.
 {¶ 35} During the suppression hearing, Trooper Roe testified that he noticed a bulge in appellant's front pants pocket. The trooper reasonably could have believed that the bulge was a weapon. Therefore, the officer was justified in conducting a pat down search for weapons. Additionally, the trooper lawfully searched appellant pursuant to the rule set forth in State v. Evans, 67 Ohio St.3d 405, 1993-Ohio-186,618 N.E.2d 162. Evans permits a law enforcement officer to conduct a pat down search for weapons if the officer possesses a "lawful" reason to place the driver of a vehicle in the officer's patrol car. See Evans, paragraph one of the syllabus.[2]
 {¶ 36} In the case at bar, the trooper's detention of appellant in the patrol car was "lawful." The trooper was investigating whether appellant was under the influence of alcohol. Because the trooper had a lawful reason to detain appellant in the patrol car, a pat down search for weapons was justified.
 {¶ 37} Once the officer conducted the pat down search for weapons, however, we believe that the officer transgressed the limits of a permissible pat down search. Ordinarily, a law enforcement officer should not open a closed container discovered on a detainee's person. See Katz, Ohio Arrest, Search and Seizure (2000 Ed.) Section 15.1, 305. If, however, the officer possesses probable cause that the container holds a weapon or contraband, the officer may open the container. See id. (stating that if "the object turns out to be a closed container, the officer may not open it unless probable cause exists prior to its being opened that it contains contraband").[3]
 {¶ 38} In State v. Oborne (1994), 99 Ohio App.3d 577,651 N.E.2d 453, the court concluded that the officer exceeded the bounds of a Terry pat down search for weapons when the officer opened a closed film canister that the officer had removed from the defendant's pocket. When the officer performed the pat down search, he felt a hard object in the defendant's left front pants pocket. The officer stated that he thought that the object could be part of a weapon. The officer removed the item from the defendant's pocket and discovered that the item was a film canister. The officer then opened the film canister. The officer stated, however, that he did not believe the canister contained a weapon and that he did not know what was inside the canister. The officer ultimately discovered cocaine inside the canister.
 {¶ 39} On appeal, the court concluded that the evidence discovered when the officer opened the film canister should be suppressed. The court noted that the state failed to present any evidence that the officer possessed probable cause to believe that the canister contained weapons or contraband. Compare State v. Lee (1998), 126 Ohio App.3d 147,709 N.E.2d 1217 (holding that evidence, discovered when officer opened a pill bottle discovered on the defendant's person, did not need to be suppressed because the officer testified that based upon his years of experience pill bottles frequently used to transport illegal drugs).
 {¶ 40} Similarly, in the case at bar, no evidence exists to show that the trooper possessed probable cause that the film container contained contraband. Unlike the situation in Lee, the officer in the case sub judice did not offer testimony to the trier of fact that, based upon his prior years of experience, he knew that film containers were used to transport illegal drugs. Consequently, we conclude that the trooper exceeded the bounds of a permissible Terry pat down search for weapons.
 {¶ 41} At this juncture we note that although the officer violated the principles set forth in Terry, we agree with the trial court's conclusion to not suppress the evidence. As the trial court noted, the officer in the case sub judice inevitably would have discovered the evidence. Thus, the inevitable discovery exception applies and permits the introduction of the evidence obtained in violation of Terry.
 {¶ 42} The inevitable discovery exception to the Exclusionary Rule allows illegally obtained evidence to be admitted at trial if the state demonstrates that law enforcement officers inevitably would have discovered the evidence during the course of a lawful investigation. SeeState v. Perkins (1985), 18 Ohio St.3d 193, 480 N.E.2d 763, syllabus; see, also, Nix v. Williams (1984), 467 U.S. 431, 104 S.Ct. 2501,81 L.Ed.2d 377. In Perkins, the court explained the inevitable discovery rule as follows:
 {¶ 43} "`If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means * * * then the deterrence rationale has so little basis that the evidence should be received.' Nix, supra. * * * [T]he court reasoned that the prosecution should not be placed in a worse position at trial because of some earlier police misconduct when the evidence gained would have ultimately been found in the absence of such misconduct. While the Exclusionary Rule is used to deny the admission of evidence unlawfully gained, and thereby to put the state in the same position it would have been absent the evidence seized, the rule should not be used to put the state in a worse position by refusing evidence that would have been subsequently discovered by lawful means. In addition, we note that the ultimate or inevitable discovery exception acts to forgive the constitutional violation made in gaining the evidence, as the Supreme Court ruled that the prosecution is not required to prove the absence of bad faith on the part of law enforcement officials in obtaining the evidence. Nix, supra." Perkins,18 Ohio St.3d at 195-96.
 {¶ 44} In the case at bar, the evidence reveals that the officer inevitably would have discovered the marijuana and the pipe. The officer testified that appellant was under the influence of drugs or alcohol and appellant would have been, and eventually was, arrested for driving while under the influence of alcohol or drugs.
 {¶ 45} After appellant's arrest, the officer would have properly performed a search incident to arrest. In contrast to a Terry search, a search incident to a lawful arrest permits an officer to "conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." Statev. Jones (1996), 112 Ohio App.3d 206, 215, 678 N.E.2d 285; see, also,Chimel v. California (1969), 395 U.S. 752, 762-63, 89 S.Ct. 2034,23 L.Ed.2d 685, (stating that when an officer conducts a search incident to arrest "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction");
{¶ 46} State v. Mathews (1976), 46 Ohio St.2d 72, 74-75,346 N.E.2d 151.[4]
 {¶ 47} Consequently, because the officer would have arrested appellant and would have conducted a full search incident to arrest, the officer inevitably would have discovered the contraband contained in the film container. We therefore agree with the trial court's decision to deny appellant's motion to suppress evidence as it relates to the officer's search.
 D {¶ 48} We further agree with the trial court's decision to deny appellant's motion to suppress evidence as it related to the initial stop of appellant's vehicle.
 {¶ 49} The Fourth Amendment, in addition to protecting against unreasonable searches, also protects against unreasonable seizures. A seizure is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v.United States (1996), 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. InWhren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id., 517 U.S. at 809-10,116 S.Ct. 1769, 135 L.Ed.2d 89; see, also Dayton v. Erickson, 76 Ohio St.3d 3,11-12, 1996-Ohio-431, 665 N.E.2d 1091.
 {¶ 50} In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity. See, generally, Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; Statev. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation. SeeErickson, 76 Ohio St.3d 3, 11-12; Prouse, supra; Terry, supra.
 {¶ 51} Based upon the foregoing well-established principles of law, we agree with the trial court's conclusion that Trooper Roe's initial stop of appellant complied with the Fourth Amendment. Trooper Roe stated that he observed appellant drive outside the marked lane of travel and that appellant's vehicle crossed the left-hand fog line. Appellant's driving provided the officer with probable cause to believe that appellant violated R.C. 4511.33(A).[5] Because the trooper possessed probable cause to believe that appellant had committed a traffic violation, the trooper's conduct in stopping appellant did not violate appellant's constitutional right to be free from unreasonable seizures. See Whren; Erickson; see, also, State v. Bolding (May 28, 1999), Erie App. No. E-97-115 (concluding that driving outside the marked lane by one-half of a foot sufficient to justify traffic stop); State v. Myers
(Jan. 7, 1998), Summit App. No. 18292 (stating that driving outside the marked lane by approximately one foot within a short distance sufficient to justify traffic stop).
 {¶ 52} Accordingly, based upon the foregoing reasons, we overrule appellant's first and third assignments of error.
 II {¶ 53} In his second assignment of error, appellant argues that the trial court erred by overruling his motion in limine. Appellant asserts that the trial court should have excluded the evidence contained in the videotape that related to his prior OMVI convictions.
 {¶ 54} We initially note that appellant, by failing to object at trial to the admission into evidence of the videotape, failed to properly preserve the issue for purposes of appeal. In State v. Seymour (Dec. 11, 2001), Hocking App. No. 01CA6 we noted the following concerning motions in limine:
 {¶ 55} "Our review reveals that the trial court's ruling was more in the nature of an in limine decision. In other words, the court gave advance warning or made a preliminary ruling concerning evidentiary issues that might arise during appellant's wife's testimony. Generally, appellate courts do not directly review in limine rulings. See State v.White (Oct. 21, 1996), Gallia App. No. 95CA08, unreported. Those rulings are tentative and interlocutory and made by a court only in anticipation of its actual ruling on evidentiary issues at trial. See McCabe/MarraCo. v. Dover (1995), 100 Ohio App.3d 139, 160, 625 N.E.2d 236, 250;Collins v. Storer Communications, Inc. (1989), 65 Ohio App.3d 443, 446,584 N.E.2d 766, 767-768. The grant or denial of a motion in limine does not preserve any error for review. See State v. Hill (1996),75 Ohio St.3d 195, 202-203, 661 N.E.2d 1068, 1077. In order to preserve the error, the evidence must be presented at trial, and a proper objection lodged. See State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523, at paragraph three of the syllabus; State v. Grubb
(1986), 28 Ohio St.3d 199, 503 N.E.2d 142, at paragraph two of the syllabus. An appellate court will then review the correctness of the trial court's ruling on the objection rather than the ruling on the in limine. See White, supra; Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08, unreported."
 {¶ 56} Therefore, in light of the fact that appellant did not properly object to the admission of that particular evidence, we must determine whether the admission of the videotape into evidence at trial constitutes plain error. See Crim.R. 52; State v. Hartman,93 Ohio St.3d 274, 294, 2001-Ohio-1580, 754 N.E.2d 1150.
 {¶ 57} An alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus; State v. Stojetz, 84 Ohio St.3d 452, 455,1999-Ohio-464, 705 N.E.2d 329; State v. Campbell, 90 Ohio St.3d 320,342, 2000-Ohio-183, 738 N.E.2d 1178. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990), 53 Ohio St.3d 107,111, 559 N.E.2d 710.
 {¶ 58} To find plain error, a court must find that: (1) error exists; (2) the error is plain; and (3) the error prejudiced the defendant. State v. Fields (1994), 97 Ohio App.3d 337, 344, 646 N.E.2d 866
(citing United States v. Olano (1992), 507 U.S. 725, 732-34,113 S.Ct. 1770, 123 L.Ed.2d 508); see, also, State v. Latson (1999),133 Ohio App.3d 475, 728 N.E.2d 465. Prejudice exists if the error "created a manifest injustice or seriously affected the `fairness, integrity or public reputation of [the] judicial proceedings.'" Fields,97 Ohio App.3d at 344 (quoting Olano, 507 U.S. at 736,113 S.Ct. at 1779, 123 L.Ed.2d 508). We conduct our review accordingly.
 {¶ 59} The admission of relevant evidence is a matter reserved to the trial court's discretion. Hartman, 93 Ohio St.3d at 281. The trial court's decision to admit or exclude relevant evidence cannot be reversed absent an abuse of that discretion. See, e.g., State v. Combs (1991),62 Ohio St.3d 278, 581 N.E.2d 1071; State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343; State v. Rooker (Apr. 15, 1993), Pike App. No. 483. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., Statev. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; State v. Montgomery
(1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1
(1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citing Berk v. Matthews
(1990), 53 Ohio St.3d 161, 359 N.E.2d 1301).
 {¶ 60} Generally, in a misdemeanor OMVI trial, "evidence of prior OMVI convictions is not admissible at trial" and that "[a]dmission of such evidence constitutes prejudicial error and requires reversal of the defendant's conviction."[6] State v. Thornburgh (Sept. 29, 1997), Lawrence App. No. 97CA21; see, also, Painter and Looker, supra, Section 19.28, 254 (stating that "in a D.U.I. misdemeanor trial, the existence of prior offenses is irrelevant and may not be proved or mentioned by the prosecution") (emphasis omitted)); State v. Atkinson (Dec. 6, 2000), Auglaize App. No. 2-2000-19 (concluding that the trial court prejudicially erred by admitting into evidence a videotape of a defendant's traffic stop in which the police dispatcher refers to a prior OMVI conviction).
 {¶ 61} In the case at bar, we do not believe that the admission into evidence of the videotape which contains some reference to appellant's prior convictions requires us to find plain error. First, we note that the dispatcher's voice who appellant claims relates to the trooper appellant's prior convictions is garbled and difficult to understand. The dispatcher cannot clearly be heard referring to prior convictions. Second, we note that appellant volunteered statements to the effect that he had prior convictions. Appellant told the trooper that he had prior convictions and appellant asked the trooper to give him "a break." Appellant did not make these statements in response to police questioning. Rather, appellant volunteered this information while he sat in the patrol car. Even when a suspect is in the custody of the authorities, statements made on a suspect's own initiative in the absence of police questions or other conduct may be volunteered and, thus, not subject to Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694. See Akron v. Milewski (1985), 21 Ohio App.3d 140,487 N.E.2d 582. Although we believe that the best course of action would be to redact or delete from a police video tape any official's reference to a suspect's prior record, under the circumstances present in the case sub judice we do not believe that the admission of the videotape constitutes plain error.
 {¶ 62} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Harsha, J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment Opinion.
[2] In State v. Lozada, the supreme court discussed whether an officer who lacks reasonable suspicion that a driver detained pursuant to a traffic stop is armed and dangerous and who lacks a "lawful" basis for detaining the driver may nevertheless perform a search for weapons:
 "1. During a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition.
 2. During a routine traffic stop, it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer.
92 Ohio St.3d 74, 2001-Ohio-149, 748 N.E.2d 520, paragraphs one and two of the syllabus.
In Lozada, the court stated that an officer may be justified in placing a driver in a patrol car and subjecting the driver to a pat down search when, for example, "a hostile crowd threatens officers or the driver."Id. at 79.
In the case at bar, however, Lozada does not apply. As we noted above, the officer was justified in conducting a pat down search for weapons under Terry or under Evans.
[3] As LaFave explains in his treatise on search and seizure:
 "It sometimes happens that when the officer withdraws the object from the suspect's pocket, it turns out to be some type of container. The question then arises as to whether it is permissible for the officer to open that container and examine the contents. Certainly the container should not be opened unless it might contain a weapon, a judgment which the officer should be expected to make on the basis of its size, weight and feel. Thus it is improper for an officer to open a small zippered coin purse weighing only a few ounces, for it `could not conceivably have contained a gun nor could any officer reasonably have considered that it contained a dangerous weapon of any kind.' Here, just as noted above with respect to pat-down situations, some courts have improperly upheld the examination of the contents of containers found on the person by engaging in `fanciful speculation' about what would be useable as a weapon in such a situation.
 Even assuming the container found on the suspect's person could contain a weapon, it might be argued that there is still no need to open it because the officer can adequately protect himself by merely putting it `out of reach during the stop.' The contrary view is that this is simply a continuation, in a sense, of the frisk of the person and thus may be carried out on the same terms. It may well be that the correctness of these contrary positions may depend upon the facts of the individual case. There may be circumstances in which the officer could `reasonably suspect the possibility of harm if he returns such objects unexamined' at the conclusion of the encounter, in which case the container should not be returned unexamined. Whether such suspicion exists will depend upon the particular circumstances, not the least of which would be whether the weapon suspected is a pistol."
4 LaFave, Search and Seizure, Section 9.5 (footnotes omitted).
[4] Appellant claims that United States v. Chadwick (1977), 433 U.S. 1, prohibited the trooper from opening the closed container. We note, however, that subsequent United States Supreme Court cases have limitedChadwick. See California v. Acevedo (1991), 500 U.S. 565,111 S.Ct. 1982, 114 L.Ed.2d 619. Moreover, Chadwick involved luggage in an automobile and not a closed container on an arrestee's person.
[5] R.C. 4511.33 sets forth the rules for driving in marked lanes. The statute provides:
 Whenever any roadway has been divided into two or more clearly marked lanes for traffic * * * the following rules apply:
 (A) A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or until the driver has first ascertained that such movement can be made with safety.
[6] The finder of fact may appropriately consider evidence of prior OMVI convictions in a misdemeanor OMVI trial under certain circumstances. For example, "if the defendant should open the door [to prior convictions] by stating that he has a perfect driving record or has never been arrested before, the state may impeach this testimony by presenting evidence of the defendant's prior convictions." Painter and Looker, Ohio Driving Under the Influence Law, Section 15.12, 208. In the case at bar, however, appellant did not "open the door" to his prior convictions.